4. Appeal No. 22-1941, Perkkala v. Merit Systems Protection Board Good morning, Your Honors, and may it please the Court. My name is Alexa Hanson, and I represent the appellant here, Mr. Perkkala. This is a dispute over an untimely filed appeal and whether or not it's excusable. There is no dispute that Mr. Perkkala filed his appeal challenging the merits of his removal on March 27, 2015, five years and 11 months beyond his April 27, 2009 deadline. There is also no dispute that the MSPB found that all but two blocks of that time were excused. These two blocks of time, which I'll refer to as the first and second contested time periods respectively, totaled about four-and-a-half months over a seven-month period of time. The first contested period is from August 27, 2009 through December 7, 2009, and the second contested period is from February 9 through March 27, 2010. The remaining time, the remaining five-and-a-half years between, before, and after these two contested periods was excused, as the MSPB affirmed in paragraphs 7, 8, and 12 of the second final decision below. The question before this court is whether the MSPB's decision declining to excuse the filing delay over these two contested time periods was an abuse of discretion, and the answer is yes. The facts of this case, while lengthy, are fairly simple when focused on this specific issue. Mr. Perkkala suffers from a host of intertwined physical and mental health issues, which the MSPB acknowledged were present before, between, and after the first and second contested time periods that affected his ability to make a timely filing. Whether health issues affected or impaired his ability to make a timely filing, not whether he was incapacitated, is the standard, as set forth in Lacey v. Department of the Navy, that the MSPB has used for over two decades to evaluate whether untimely filings are excused for health reasons. What's the exact language from Lacey? The language... Factor number three. Yes, the language from factor number three requires that one must explain how the illness prevented him from timely filing an appeal or request for extension of time. Right. So I guess how did the Board here abuse its discretion in concluding that the appellant didn't prove that how whatever his condition was prevented him from timely filing his appeal? Because they found that the same vein of evidence, the same conditions, excused his delay between December 7th and February 9th. But he suffered from those conditions in the two contested periods as well. Finding that the same activities excused his behavior during one period of time but not during the other two was an abuse of discretion. Just during that period of time, the December to February period of time, he actually met with a VA doctor who had examined him and given him a diagnosis. And so, I guess in that way, the Board was prepared to forgive that block of time up until February when he said, quote unquote, felt good. But all that the Board had to go on before December 2009 was some generalized indication that someone named Dr. Stern had previously saw him at some earlier period of time. That's an unstated date and also unstated to what degree Dr. Stern had any kind of specific opinion about whatever the appellant's condition was. So I guess that's the problem I saw that the Board was having in terms of trying to figure out whether the appellant was able to prove good cause prior to December 2009. Your Honor, there certainly are no medical records between August 27th and December 7th, 2009. Mr. Percala had lost his insurance at that point. But there is evidence in the record that Mr. Percala was suffering from PTSD and depression. For example, there is a letter that he sent to the employee assistance program on February 23rd, 2009 explaining that he is suffering from PTSD and other mental health issues. So I'm interested, and I think you're going here next, is what's your strongest record evidence explaining how petitioner's illness prevented a time of filing during each of these contested periods that we're talking about, the ones that you defined? Sure. So Mr. Percala's PTSD and depression led him to an inability to focus on more than one thing at a time. He became very confused by which case was which. It sounds like you have record of sight for me. Can you also give those as you're doing your explanation? Sure. For example, at 566-74, which was a submission that Mr. Percala made while he was pro se at the MSPB, explaining all of the issues that he was grappling with. And he has specified that he was suffering from depression and became very confused by the various cases, not understanding which was which and which issue of the many that he was attempting to address he would be working with at any given time. With respect, in particular, to the PTSD, his disability decision at footnote three observed that he received social security disability based on a finding of PTSD. That decision was made at some point prior to the OPM decision in February of 2015. With respect to the time period after February 9th, 2010, Mr. Percala continued to receive treatment for the exact same condition, PTSD, depression, as shown in, for example, the March 31st, 2010 visit, which you can find at page 463 of the record. He again saw a counselor in April 2010, in May 2010, in August 2010, at which point he began to see Dr. Sabbats, who submitted a letter actually in 2012, indicating that he was still suffering from the exact same conditions that he was suffering from when he was first seen at the VAMC in December of 2009. So why are those not simply evidence of steps one and two of LACI? Or why is it an abuse of discretion for the board not to see that as simply going to, okay, he had the illness, we know when he had the illness, but there's an absence of evidence explaining how the illness may be ongoing. Maybe at an earlier time it kept him from focusing on more than one thing, but how do we know that there's an explanation for that failing of step three of LACI in these two particular time periods? The statement that Mr. Percala made in January of 2016 applies to the whole period. That's the one you referenced at 566? Yes, 566 through 74. It is a lengthy collection of text, Your Honors. And there does not appear ñ I mean, the way Mr. Percala presents it, his ability to focus on a given case at any single time or more than one case at any one time has not changed over that period. There wasn't a certain aha moment in, for example, February of 2010 where he was all of a sudden able to deal with more than one issue at a time. He continues to suffer from these conditions that do affect his ability to file and to focus on more than one issue at a time. I thought there was some indication that the appellant was able to focus on at least a couple of different things at the same time. One example is pursuing a workers' comp claim and grievance of his removal. And then another point in time, some kind of FLRA claim against the union while at the same time seeking disability retirement benefits. So, I mean, I guess the fact that he's able to pursue one case suggests that he could have time to file this appeal. But then there's other evidence that shows that he was, in fact, pursuing multiple things at the given time. The record evidence in the argument made by the agency in the briefing refers to a workers' comp claim that was pursued at some point in 2009. The record actually isn't particularly clear specifically when he was pursuing that vis-à-vis his grievance petition. The record, however, does show that with respect to the arbitration, as soon as that was invoked, it was handed over to the union, which ultimately declined to pursue it. Mr. Percalla at that point in time really had no involvement. He was not independently pursuing that particular claim. I guess he initiated it, though. He was able to initiate it, which is all that we're looking for here. He was able to initiate it, but in those situations, Your Honor, he had representation, which is not something that he had with respect to the appeal of his removal proceeding. He was unable to secure representation before the MSPB. Now, with respect to Your Honor's second question, the time period concerning March 2010, where he was pursuing both the OPM matter as well as the FLRA matter, the FLRA matter actually began immediately after the union declined to initiate arbitration back in August of 2009. Again, it was a similar proposition. He filed the complaint. The FLRA took it from there. They ultimately ended up settling the case over his strenuous objection. With respect to the OPM matter, he also had representation, so it was an issue where he had someone there to guide him, to help him organize his thoughts and focus on the particular issue at the time. Unless Your Honor has any more questions, I'd like to reserve the rest of my time. The 2016 doctor note that you were referring to, does it refer back to the 2009 time period? I believe there was a 2012 doctor note from Dr. Sabats at 6.05 on the record, which refers back to August 2010, which was the first time that particular psychiatrist at the VAMC began seeing Mr. Brikhala. The 2016 item that I referenced was the statement that Mr. Brikhala submitted at the MSPB at 566-74. Right, but does that doctor note indicate that, yes, whatever he's been dealing with that is debilitating goes all the way back to 2009? It does not, Your Honor. Dr. Sabats only began seeing Mr. Brikhala in August of 2010. Oh, I see. Okay. Thank you. May it please the Court. The Board's law requires that the entire period of untimeliness be covered by medical documentation or otherwise, and the record shows that here Mr. Brikhala did not do that. This is ultimately a case about the uncertainty in the medical documentation that he did submit. He submitted one large voluminous stack of medical documentation that lacked detail for a significant period of time, as counsel pointed out, for period 1 and period 2, period 1 being between August and December 2009 and period 2 being between about February 2010 and March 2010. The Board still, despite the size of the documents, did review the documents and did its best to determine what medical, to figure out if all three Lacey factors were met, if 1 and 2 about what condition existed and when it existed were met, and then 3, if those conditions prevented him from filing. And the Board's determination were that there was just not sufficient clarity in the documentation to cover those two periods of time. Do you believe your best argument is under Lacey factor 3? Yes, Your Honor. There just simply was not an explanation for why those conditions prevented him from filing, particularly in light of the fact that he was suffering from or possibly suffering from depression between April 2009 and August 2009 when his litigation ended, but was able to engage in litigation at that same time. And yet when that litigation ended, there's nothing in the record indicating as to why his depression would have then prevented him from filing a new appeal with the Board to continue to pursue his removal. How much explanation is sufficient explanation? For instance, with PTSD, if it's known to the Board that that means you can't easily focus for some reason, and there's evidence of that at an earlier time period, what does he need? Does he just need one sentence saying, and it continued to be a problem for me? Understanding he was pro se, you'd still need to submit something explaining that, yes, I had PTSD at this time. The record concerning his medical conditions, including his PTSD, wasn't exactly as clear as he represents between that March 2008 time frame and December 2009. In March 2008, he's actually diagnosed as having the PTSD under control and is cleared to go back to work. In February 2009, he writes a letter that says he's actually coping much better with the PTSD, and at that time he's employed. Then there's no reference to PTSD all the way until December 2009, but there's a reference in that document stating that he's already receiving needed treatment for PTSD. This isn't a finding from the Board that yes or no, he has PTSD. This is a finding from the Board that it's unclear as to whether or not his PTSD was so grave that it prevented him from filing between that March 2008 and December 2009 time frame. Why is his January 2016 statement that your friend referred us to not sufficient explanation for the whole period? Well, as Judge Chen pointed out, it does not actually relate back to December 2009. It just simply states at that time he has PTSD and he's unable to focus on two matters at that time. The Board's requirements require medical evidence to actually cover an entire period of time. The matter I referred to in a brief, Earl, has doctor's notes that actually state this person has been treated for this condition all the way back through the period of untimeliness. And then you have the case Nesby we referenced in which the person has medical notes covering about a week's worth of conditions, and then after that there's no medical notes and only unsworn testimony from the appellant saying there's still suffering from the condition. But the Board in Nesby found that that was not sufficient to meet the burden. Do you agree that the burden is only that he showed that his ability to file was affected or impaired? He doesn't have to show that he was fully incapacitated. As Judge Chen pointed out, though, too, what the standard actually states is that it's prevented. Prevented or impaired. And so it's more than just showing a minor illness. Prevented and impaired might be slightly different. But is it enough that it was materially more difficult for him, or does he need to show he really couldn't do the filing? The actual standard is prevented. And there's been other case law from the Board since then that have maybe equated prevented and impaired, but the standard used in Lacey, the exact word used is prevented. The Board mentioned incapacitated in a footnote in Lacey to clarify that prior cases may have found, or used the word incapacity, which may have been too high a burden. The Board's not looking for somebody to prove that they were in a coma. They are looking, though, for the person to show that they were prevented, unable to file, as a result of the condition. Has our court addressed that question as to what the standard should be? The court hasn't addressed whether or not prevented, or the court hasn't precisely defined prevented, but the court has repeatedly affirmed decisions from the Board using the prevented standard. Any precedential opinions or non-precedential? I'm unaware of any at this time. And going back to the depression, I understand I covered PTSD, or actually one more note on the PTSD. In April of 2010, there was actually another note from the VA indicating he didn't even actually meet the criteria for PTSD. I understand he disagrees with that, but notes like that just lend further to the uncertainty about whether or not that condition prevented him from filing at that time. There was similar uncertainty about whether the depression prevented him from filing. As I noted, he was already engaged in litigation with the pursuing his removal through the arbitration process. And while he argues now that the FLRA process, by which he pursued against his union for dropping him, basically prevented him, or he argued that it was a passive matter. And if it was a passive matter in March, such that it didn't count as a second matter for him then, it should not also count as a second matter in August 2009, preventing him from filing an appeal. And then for his anxiety, I understand the petitioner continues to say these all existed all the time, but his anxiety was not even diagnosed until August 2010. And it didn't appear in any notes until approximately 2011, 2012. But anxiety was never actually a condition attributed to him until at least August 2010, well after the period of untimeliness the board found. Ultimately the burden was on him to clear up the uncertainty from all these different medical notes as to whether or not he was prevented by his conditions from filing. He didn't do that. So because he did not, the board correctly dismissed his appeal for untimeliness. Do the panelists have any further questions? Yes, the panel affirmed the board for dismissal of untimeliness. Thank you. Your Honors, a few points on rebuttal. With respect to the issues of whether or not Mr. Percala was able to convey and explain why his conditions prevented him from filing or as the standard has been held in, for example, Washington versus the Department of Navy, a case from 2006, the language that is used there is whether it affected or impaired. Now we understand that the Lacey Standard, which is from 1998, uses the word prevented, but subsequent cases seem to have taken a more gentle approach to the level that is applied or the level that is required to explain why a filing could not have occurred. There seems to be more of a development across the course of history to show that a lighter standard or, as Judge Stark put it, a level of sufficiency to explain what had happened and why the petitioner was unable to file the petition that doesn't require showing that they were simply incapable of doing so. But your appeal doesn't ask us to determine what standards should apply. We should take as given the Lacey Standard, the Washington versus Navy Standard, and all the other standards you've argued to us. Yes, Your Honor. And we argue that the evidence that was presented below meets that standard. Mr. Pakala has suffered from PTSD and depression, and certainly he continued to do so in March of 2010, and he had the same conditions in the spring of 2009. The fact that there is no medical evidence from that period of time is really more indicative of the fact that he lost his insurance and was unable to see a medical professional at that point in time who could supply the relevant evidence to support Mr. Pakala's statement that he was suffering at the time for the two periods of time in question. Now, with respect to counsel's argument with respect to Earle versus Nesby, the critical difference is the entirety of the period that is covered. Now, the distinction in Nesby is that only evidence was presented with respect to part of the time, whereas here we have evidence that spans the entirety of the time, both before, between, and after the two contested periods. The other point that I would like to raise is the agency has still not addressed any issues of prejudice to the agency to address this hearing on the merits, and certainly there is a presumption, especially when a petitioner is moving forward pro se, that if a petitioner has articulated a good reason for the delay, all reasonable effort should be made to have a hearing on the merits. And since the agency has not identified any prejudice, we ask that this Court find, remand the case for a hearing on the merits. Thank you, Your Honors. Thank you. Case is submitted.